[805 NYS2d 704]

Suzanne R. Strauss, Appellant, v New York State Department of Education et al., Respondents.

Third Department, December 15, 2005

## APPEARANCES OF COUNSEL

*Tobin & Dempf, L.L.P.,* Albany (*Kevin A. Luibrand* of counsel), for appellant.

*Eliot Spitzer, Attorney General,* Albany (*Frank K. Walsh* of counsel), for New York State Department of Education and another, respondents.

*Peter Henner,* Clarksville, for Edward Drago, respondent.

## OPINION OF THE COURT

SPAIN, J.

Plaintiff was an employee of defendant State Education Department (hereinafter SED) whose job responsibilities between 1995 and 2002 included reviewing and approving certain aspects of the apprenticeship programs established under Labor Law article 23. By statute, SED and defendant Department of Labor (hereinafter DOL) share the role of administering these programs (*see* Labor Law §§ 811, 812; 12 NYCRR 601.5). In carrying out her duties, it was necessary for plaintiff to interact with DOL's Director of Employability Development, defendant Edward Drago, who administered and supervised the apprenticeship programs established by DOL.

Beginning in 2000, Drago allegedly began making sexual comments to and about plaintiff, including disparaging, gender-related remarks about her professional ability. Plaintiff reported Drago's behavior to her superiors at SED and filed an SED discrimination and harassment complaint, as well as a complaint with the Division of Human Rights. The Inspector General's office led the investigation into plaintiff's allegations; it ultimately issued a report on August 15, 2002, finding that Drago had created an intimidating and unprofessional work environment and interfered with the working relationship between plaintiff and DOL by "engag[ing] in a pattern of conduct that included recurrent explicit, hostile, vulgar, offensive and often demeaning comments based upon gender, and in some cases, the ethnicity of other state employees, including [plaintiff]." DOL reassigned Drago while conducting a supplemental investigation and, in the end, formally counseled him and placed a memorandum in his personnel file, but restored him to his prior position. SED then reassigned plaintiff in order to avoid further contact with Drago.

Thereafter, plaintiff commenced this action claiming a violation of title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.*) and the Human Rights Law (Executive Law § 296). Defendants successfully moved for summary judgment, prompting this appeal by plaintiff. We now affirm.

As an initial matter, we are unpersuaded by Drago's argument on appeal that plaintiff's claims are barred by title VII's 300-day limitations period (*see* 42 USC § 2000e-5 [e] [1]).

> "[I]n the case of a hostile work environment claim, the statute of limitations requires that only one sexually harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability" (*Petrosino v Bell Atl.*, 385 F3d 210, 220 [2d Cir 2004], quoting *National R.R. Passenger Corp. v Morgan*, 536 US 101, 117 [2002]; *see Lambert v Genesee Hosp.*, 10 F3d 46, 53 [2d Cir 1993], *cert denied* 511 US 1052 [1994]).

Plaintiff filed her discrimination claim with the Division of Human Rights on November 16, 2001; thus, it was incumbent upon plaintiff to allege at least one act of sexual harassment occurring after January 20, 2001. Plaintiff presented evidence that Drago referred to her, in the presence of other DOL employees, in sexually offensive terms at the State Apprenticeship and Training Council held in July 2001. Accordingly, we hold that plaintiff's claims were timely made.

Turning to the merits, to recover under either title VII or New York's Human Rights Law, a plaintiff must demonstrate that he or she had an employment relationship with the defendant employer (*see Wimmer v Suffolk County Police Dept.*, 176 F3d 125, 135-136 [2d Cir 1999], *cert denied* 528 US 964 [1999]; *Scott v Massachusetts Mut. Life Ins. Co.*, 86 NY2d 429, 433 [1995]).[1] Here, plaintiff proceeds against SED and DOL, collectively, solely on the theory that for the purposes of determining liability under title VII and the Human Rights Law, the two agencies can be considered a single employer—creating an employment relationship between herself, Drago and both agen-

---

**1.** "The standards for recovery under the New York State Human Rights Law are the same as the federal standards under title VII of the Civil Rights Act of 1964" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 n 3 [2004] [citations omitted]).

cies—by virtue of the responsibility shared by SED and DOL for the apprenticeship program.[2]

For purposes of recovery under title VII, a plaintiff may claim to be the employee of more than one entity; a parent corporation, for example, can be held liable for the title VII violations of its subsidiaries under a single-employer theory of recovery (*see e.g. Cook v Arrowsmith Shelburne, Inc.*, 69 F3d 1235, 1241 [2d Cir 1995]; *see also* 42 USC § 2000e [a], [b]). In determining whether it is appropriate to treat a parent and subsidiary as a single employer, the courts have applied a four-part test requiring evidence of " '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control' " (*Garcia v Elf Atochem N. Am.*, 28 F3d 446, 450 [5th Cir 1994], quoting *Trevino v Celanese Corp.*, 701 F2d 397, 403-404 [5th Cir 1983]; *accord Cook v Arrowsmith Shelburne, Inc., supra* at 1240). In several jurisdictions, this test also has been applied to determine title VII liability for *public* entities under the single-employer theory (*see e.g. Sandoval v City of Boulder, Colo.*, 388 F3d 1312, 1322-1325 [10th Cir 2004] [examining the relationship between city and a regional emergency communications center]; *Artis v Francis Howell N. Band Booster Assn., Inc.*, 161 F3d 1178, 1184 [8th Cir 1998] [relationship between booster association and school district]; *Graves v Lowery*, 117 F3d 723, 727-729 [3d Cir 1997] [relationship between county and state courts]; *Massey v Emergency Assistance, Inc.*, 724 F2d 690, 691 [8th Cir 1984], *cert denied* 469 US 930 [1984] [relationship between city and private, not-for-profit charitable corporation]; *Rivera v Puerto Rican Home Attendants Servs., Inc.*, 922 F Supp 943, 949-950 [SD NY 1996] [relationship between city and a private, independent contractor]; *United States v City of Yonkers*, 592 F Supp 570, 589-591 [SD NY 1984] [relationship between state agency and municipality]).

On the other hand, some precedent supports eschewing the four-part test when public employers are involved in favor of an approach which affords deference to governmental subdivisions established by state law. For example, in the related context of determining whether the employees of a city and a city

---

**2.** Notably, plaintiff does not advance a theory to hold her employer, SED, accountable for the acts of Drago as a nonemployee (*but see Quinn v Green Tree Credit Corp.*, 159 F3d 759, 766 [2d Cir 1998] [identifying, but not deciding, the possibility that employers owe a duty to employees who are subjected to harassment by nonemployees]). Accordingly, we will not address that issue.

redevelopment agency could be aggregated for the purposes of establishing the minimum number of employees necessary to establish title VII coverage, the Eleventh Circuit adopted the following approach:

> "[W]e begin with the presumption that governmental subdivisions denominated as separate and distinct under state law should not be aggregated for purposes of Title VII. That presumption may be rebutted by evidence establishing that a governmental entity was structured with the purpose of evading the reach of federal employment discrimination law. Absent an evasive purpose, the presumption against aggregating separate public entities will control the inquiry, unless it is clearly outweighed by factors manifestly indicating that the public entities are so closely interrelated with respect to control of the fundamental aspects of the employment relationship that they should be counted together under Title VII" (*Lyes v City of Riviera Beach, Fla.*, 166 F3d 1332, 1345 [11th Cir 1999]).

In the instant case, Supreme Court applied the more deferential test articulated in *Lyes*, concluding that SED and DOL were not sufficiently interrelated to overcome the presumption of separateness.

We find the broader four-part test and the *Lyes* approach, at least as applied in this context, to be reconcilable. Whether we begin with the rebuttable presumption articulated in *Lyes*, or simply place the burden on plaintiff to demonstrate under the broader four-part test that the agencies should be treated as a single employer, we ultimately devolve to the same inquiry and, under the factual circumstances presented here, reach the same result. The four-part test was originally sanctioned for use by the National Labor Relations Board as a means of ascertaining whether two entities constituted a single employer in the context of labor disputes (*see Radio & Television Technicians v Broadcast Service of Mobile, Inc.*, 380 US 255, 256-257 [1965]). As thereafter applied in the title VII context, the second factor—centralized control of labor relations—has became the focus of the inquiry, such that " 'the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?' " (*Cook v Arrowsmith Shelburne, Inc., supra* at 1240, quoting *Trevino v Celanese Corp., supra* at 404). Arguably,

this same query could be used to determine, under the *Lyes* analysis, whether the two entities are sufficiently "interrelated with respect to control of the fundamental aspects of the employment relationship" (*see Lyes v City of Riviera Beach, Fla., supra* at 1345).

Here, we have governmental agencies that are essentially horizontally situated; DOL is established pursuant to Labor Law article 2 and SED is an agency established under the Education Law and governed by the Board of Regents (*see* Education Law § 101). Thus, there is no direct correlation to the parent/subsidiary context explored in the private sector. In describing the apprenticeship program, plaintiff has depicted a bridge between the two agencies, a program in which SED and DOL each had discrete responsibilities in achieving a common goal, but failed to offer any evidence that, through her work on the program, DOL obtained any control over or responsibility for her employment. No evidence exists that Drago or DOL had any authority to hire, transfer, promote, discharge or discipline plaintiff. In our view, the creation by the Legislature of a program that utilizes the talents of two distinct agencies to realize a singular goal does not, without more, merge the agencies for title VII purposes. Accordingly, even if we were to adopt the four-part test advocated by plaintiff, we would find that she had not demonstrated that SED and DOL can be treated as a single employer for purposes of determining liability under title VII and the Human Rights Law.

Supreme Court also properly dismissed plaintiff's title VII claims against Drago, as " 'individuals are not subject to liability under Title VII' " (*Patterson v County of Oneida, N.Y.,* 375 F3d 206, 221 [2d Cir 2004], quoting *Wrighten v Glowski,* 232 F3d 119, 120 [2d Cir 2000]; *see Tomka v Seiler Corp.,* 66 F3d 1295, 1313 [2d Cir 1995], *abrogated on other grounds by Burlington Indus., Inc. v Ellerth,* 524 US 742 [1998]). Plaintiff essentially concedes as much, directly challenging on appeal only the dismissal of her claim against Drago under the Human Rights Law (*see* Executive Law § 296). The Court of Appeals has held that individuals will not be subject to suit under the Human Rights Law unless they are "shown to have any ownership interest or any power to do more than carry out personnel decisions made by others" (*Patrowich v Chemical Bank,* 63 NY2d 541, 542 [1984]). However, in *Tomka v Seiler Corp.* (*supra*), the Second Circuit carved out an exception to this rule, holding that under Executive Law § 296 (6), which provides

that "it shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so," an individual "who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [Human Rights Law]" (*id.* at 1317; *see also Steadman v Sinclair*, 223 AD2d 392, 393 [1st Dept 1996]; *Gentile v Town of Huntington*, 288 F Supp 2d 316, 321-322 [ED NY 2003]; *but see Trovato v Air Express Intl.*, 238 AD2d 333, 334 [2d Dept 1997] [declining to follow *Tomka*, reasoning that "(t)o find a coemployee liable as an aider and abettor would ignore the statutory and legal authority limiting the parties who may be sued for employment discrimination"]; *Falbaum v Pomerantz*, 891 F Supp 986, 992 [SD NY 1995] [same]).

Even were we to follow *Tomka* and recognize the possibility that a coworker could be liable—under an aiding or abetting theory—for his or her direct participation in any of the activities proscribed by the Human Rights Law, we would nonetheless affirm in light of our conclusion that plaintiff has failed to present a cognizable legal basis for holding either SED or DOL liable. Where no violation of the Human Rights Law by another party has been established, we find that an individual employee cannot be held liable for aiding or abetting such a violation. In other words, we hold that individuals cannot be held liable under Executive Law § 296 (6) for aiding and abetting their own violations of the Human Rights Law (*see Trovato v Air Express Intl., supra* at 334; *DeWitt v Lieberman*, 48 F Supp 2d 280, 294 [SD NY 1999]; *cf. Murphy v ERA United Realty*, 251 AD2d 469, 472 [2d Dept 1998]; *Bennett v Progressive Corp.*, 225 F Supp 2d 190, 213-214 [ND NY 2002]).

CREW III, J.P., PETERS, CARPINELLO and KANE, JJ., concur.

Ordered that the order is affirmed, without costs.