Lisa **RANERI**, Plaintiff

v.

John **McCAREY**, individually, Lou Corda, individually, and The County of Orange, Defendants.

**No. 08 CIV 1107(WGY).**

United States District Court,
S.D. New York.

May 13, 2010.

---

Jonathan Lovett, Lovett & Bellantoni, LLP, Hawthorne, NY, for Plaintiff.

Sharon Kay Worthy–Spiegl, Goshen, NY, for Defendants.

## Memorandum and Order

WILLIAM G. YOUNG, District Judge.[1]

## I. INTRODUCTION

The defendants John McCarey ("McCarey"), Lou Corda ("Corda"), and The County of Orange ("Orange County") move for summary judgment upon the Complaint of the plaintiff, Lisa Raneri ("Raneri") [Doc. No. 10].

This Court has jurisdiction pursuant 28 U.S.C. § 1331.

### A. Undisputed Facts[2]

Raneri has been an employee of the Orange County Department of Real Property Tax Services (the "Department") since in or about May 1987 and has held the position of tax map technician since in or about April 2001. Defendants' Statement of Facts ("Defs.' Facts") ¶ 1 [Doc. No. 18]; Raneri's Counter-Statement of Facts ("Raneri's Facts") ¶¶ 1, 77 [Doc. No. 23], Raneri has the longest tenure at the Department of any tax map technician. Raneri's Facts ¶ 77.

In or about February 2000, McCarey was appointed as Director of the Department. Defs.' Facts ¶ 4. Prior to McCarey's employment, the Department relied on hard-copy maps and hand-drawing, in response to which McCarey introduced a new, computerized system. *Id.* ¶¶ 6–8. At the time of McCarey's appointment as Director, Raneri was the only female tax map technician working in the Department until the hiring of MaryAnn Westbrook on July 9, 2001. *Id.* ¶ 5.

Beginning in or around the time of his appointment until in or around April 2005, McCarey divided the Department's six tax map technicians into groups identified by team name or color. *Id.* ¶¶ 9–10, During

this time, there were six tax map technicians employed by the Department: Raneri, Michael Breitenfield, Tom Gronzka, MaryAnn Westbrook, Steven Green, and Matthew Milby. Defs.' Facts ¶ 11; Raneri's Facts ¶ 81. Effective March 1, 2003, the groups were divided as follows: Team A—Raneri, Westbrook, and Gronzka; Team B—Breitenfield, Green, and Milby. Defs.' Facts ¶ 11.

While it is disputed by the defendants, Raneri alleges that McCarey provided greater support and training, and assigned superior work to the younger, all-male Team B, due to their age or gender rather than professional competence. Raneri's Facts ¶¶ 89–94, Raneri further alleges that McCarey continued to favor the members of Team B despite her greater experience as a tax map technician. Raneri's Facts ¶ 97. Raneri raised her concerns about the division of work numerous times with her colleagues. *Id.* ¶ 113.

Not all programs which were installed on Team B's computers were installed on Raneri's, although Raneri did at all times have access to a 'shared computer,' which had the programs. Defs.' Facts ¶¶ 18–19; Raneri's Facts ¶ 93. Members of Team A did not even have internet access on their computers until in or around September 2007. Defs.' Facts ¶ 20; Raneri's Facts ¶ 20.

Raneri also alleges that Team A continuously had to correct maps incorrectly completed by Team B. Raneri's Facts ¶ 95. When Raneri brought these deficiencies to McCarey's attention, and advised McCarey that Team B would often ignore her instructions as to necessary corrections, McCarey allegedly stated, "Well, they're men, they're not going to listen to you. It

---

1. Of the District of Massachusetts, sitting by designation.

2. Facts are undisputed unless otherwise indicated.

would be like my wife telling me what to do, it would just piss me off." *Id.* ¶ 110. Raneri informed Glenn Swenson and Assistant Director Eric Ruscher about the comment, but Ruscher attempted to minimize the significance of the comment saying that McCarey "didn't mean it." McCarey made further inappropriate comments and behaved disrespectfully towards other female members of the staff, including Westbrook and McElwee. Raneri's Facts ¶¶ 98–109; Defs.' Facts ¶¶ 59–60.

Corda was employed as the Deputy Commissioner of Personnel at Orange County from June 2003 until July 2008. Raneri's Facts ¶ 79; Defendants' Reply Facts ¶ 19 [Doc. No, 33] ("Defs.' Reply Facts"). In 2005, Raneri, Westbrook, and McElwee submitted discrimination complaints; Raneri completed and submitted a complaint form, and Raneri and Glenn Swenson subsequently spoke to Corda in relation to these complaints. Raneri's Facts ¶¶ 116–18, 121. Corda then advised Raneri that the Department was "[McCarey's] department, [and] he can run it any way he sees fit." *Id.* ¶ 122. Raneri alleges, and the defendants dispute, that at subsequent meetings with Corda, Raneri expressed concerns about the performance and behavior of Team B members, and informed Corda of McCarey's earlier comments and his continuing poor treatment of female employees. *Id.* ¶¶ 123, 125–27, 132–33. Raneri maintains that Corda acknowledged that Raneri had made these complaints, but stated that he had no power to change the situation. *Id.* ¶ 136.

In interviews with other employees, Corda failed to ask follow-up questions regarding complaints of sexism and favoritism toward male employees. *Id.* ¶¶ 138–55. Corda subsequently spoke with McCarey regarding the complaints and interviews, although no notes were taken of the meeting. *Id.* ¶ 160. The defendants

dispute Raneri's assertion that at that meeting, McCarey acknowledged making his comment to Raneri about Team B members not listening to her because she was a woman. *Id.* Corda made a final determination on April 11, 2005 that there was no discrimination in this instance, and that while "inappropriate comments" were made, Corda could not detect the favorable treatment of men. *Id.* ¶¶ 163–65.

In or about June 2005, Glenn Swanson retired from his position as Tax Map Coordinator at the Department. Defs.' Facts, ¶ 23. At this time, there were six tax map technicians employed by the Department: Raneri, Michael Breitenfield, Tom Gronzka, MaryAnn Westbrook, Steven Green, and Matthew Milby. Defs.' Facts ¶ 11.

Historically, the most senior tax map technician had been promoted to fill that vacancy. Raneri's Facts ¶ 166. On September 2, 2004, approximately nine months before his retirement, Swenson wrote a strong letter of recommendation to McCarey in favor of Raneri's promotion to the position of tax map coordinator. *Id.* ¶ 167. McCarey also received two other recommendations for Raneri's appointment. *Id.* ¶ 169a, Swenson wrote a second letter of recommendation dated July 26, 2005 in favor of Raneri's candidacy. *Id.* ¶ 170.

In September 2005, after interviewing Raneri, Milby, Breitenfield, and Green, McCarey advised the Commissioner of Finance that he was going to appoint Milby to the post of provisional tax map coordinator. *Id.* ¶ 173. At the time of his appointment, Milby held a Bachelor's Degree in Geographic Information Systems and was working towards his Masters Degree. Defs.' Facts ¶ 27. In order for the appointment to be made permanent, Milby would have to sit for the tax map coordinator test and finish in the top three according to the civil service "rule of three"

requirement. *Id.* ¶ 32. On or about October 21, 2006, all six tax map technicians took the civil service test, with Milby tying for the fifth highest score. *Id.* ¶ 30. As a result, Milby was unavailable for permanent appointment to the post of tax map coordinator. *Id.* ¶ 32.

Effective January 2007, McCarey appointed Breitenfield permanently to the post of tax map coordinator. *Id.* ¶ 33. At the time of his appointment, Breitenfield had been employed as a tax map technician for twelve years. *Id.* ¶ 34.

On May 3, 2007, Raneri filed a Charge of Discrimination dated April 30, 2007 with the New York State Division of Human Rights ("NYSDHR") alleging discrimination and retaliation on basis of gender, which was then filed with the Equal Employment Opportunity Commission ("EEOC") on June 5, 2007. *Id.* ¶ 71. On September 7, 2007, Raneri filed a second Charge of Discrimination dated September 4, 2007 with the NYSDHR, alleging both gender and age discrimination in addition to retaliation, which was filed with the EEOC on October 9, 2007. *Id.* ¶ 72. Raneri commenced this action in the Southern District of New York on February 4, 2008, alleging that the defendants discriminated against her in violation of Title VII, the Age Discrimination in Employment Act, 42 U.S.C. § 1983, and New York State Law. *Id.* ¶ 74; Compl.

## II. ANALYSIS

### A. The Standard for Summary Judgment

Summary judgment shall be granted if "there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, a court must view all the evidence and draw all inferences in the light most favorable to the non-moving

party. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988). A genuine issue for trial exists if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Statute of Limitations

The defendants all raise issues of timeliness with Raneri's claims. Defs.' Mem. 7–12. Raneri advances no counter-arguments.

1. Raneri's Title VII and Age Discrimination in Employment Act ("ADEA") claims are subject to a 300 day limitation

■ Under both Title VII and the ADEA, a plaintiff must file a claim with the EEOC within 300 days after each alleged discriminatory incident before filing a lawsuit. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e)(1); *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir.2010). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Where a plaintiff alleges more than one discriminatory act, the mere occurrence of one discrete act within the statutory time frame does not make any other discrete act that occurred beyond the time period timely. *See id.*

■ Raneri filed her claims for gender and age discrimination with the EEOC on June 5 and October 9, 2007, respectively. Therefore, Raneri may only proceed on discriminatory acts committed on or after August 9, 2006 and December 13, 2005, respectively. The only act alleged that occurred after these dates was the appointment of Breitenfield to the post of tax map coordinator. Therefore, it is only for

this 'discrete act' of alleged discrimination that a claim can go forward pursuant to Title VII and the ADEA. Raneri, however, may advance other discrete acts as evidence at trial to show that discrimination was taking place, and also that retaliation was a factor in failing or refusing to appoint Raneri. *See id.* Such time barred acts are not themselves the basis for recovery. *Id.* at 109, 122 S.Ct. 2061 ("An individual must file a charge within the statutory time period. ... A claim is time barred if it is not filed within [the] time limits.").

#### 2. The Section 1983 and the New York State Human Resources Law claims are subject to a three year limitation

■ The statute of limitations for Section 1983 claims in New York is three years. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir.2004). The statute of limitations for discrimination claims brought under the New York Human Resources Law is also three years. *Connolly v. McCall*, 254 F.3d 36, 40–41 (2d Cir.2001). Raneri filed her claim in this Court on February 4, 2008, thereby barring claims on all alleged acts accruing before February 4, 2005 in the absence of an exception.

Raneri's only argument for extending the time limit under Section 1583 and New York Law is the "continuing violation theory." *See Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir.2004) ("[I]f a plaintiff has experienced a continuous practice of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.") (internal quotation marks omitted). Raneri states facts which support her argument that McCarey created and maintained a hostile work environment from the time of his appointment as Director in 2000 until

the present, and thus Raneri should be allowed to reach back to the original date. Raneri's Facts ¶ 89. In order for Raneri to advance this argument, she must prove to a jury that discrimination began before February 4, 2005 and was continuing throughout the period. Only then can she reach back to claim for discriminatory acts prior to February 4, 2005.

#### C. Individual Liability of Corda

■ Under New York Executive Law § 296(6), an employee may be held personally liable if he actually participated in the discriminatory conduct complained of. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir.1995).

There are no allegations contained in Raneri's Complaint (and no evidence has been submitted with her brief) that suggest that Corda was in any way directly involved in the alleged discrimination. He had no part in McCarey's comments or in the promotion procedure, nor is there any evidence that he acted to "aid, abet, incite, compel or coerce the doing of any of the [discriminatory] acts" alleged. *See* N.Y. Exec. Law § 296(6).

Raneri's claims against Corda center around his failure to find that McCarey had discriminated against her and other female employees at the Department. Such a failure would more properly be brought as a negligence claim—a claim which Raneri has failed to plead—rather than being brought under New York Executive Laws. Therefore, judgment must enter for Corda on all claims against him.

#### D. ADEA and Age Discrimination Claims

Raneri claims that she was subjected to age discrimination during her employment at the Department. Raneri's Facts ¶ 112, Raneri's claims of age discrimination center on McCarey's referral to her as "old

school." *Id.* Raneri also alleges that Teams A and B were segregated on the basis of age. Raneri's Memorandum of Law 6–8 ("Raneri's Mem.") [Doc. No. 24].

Raneri offers no further evidence that she was subject to age discrimination, or that the promotion to tax map coordinator was denied to her as a result of her age. Raneri did not include allegations of age discrimination in any of her complaints to Corda, nor does it appear that these issues were raised until the filing of the October 9, 2007 discrimination complaint with the EEOC. Indeed, absent the "old school" comment, Raneri's complaints are entirely concerned with "the way he [McCarey] treats women," rather than allegations of ageism. *Id.* ¶ 136.

In the absence of sufficient evidence raising a genuine issue of material fact, Raneri's claims under the ADEA fail.

### E. Prima Facie Gender/Sex Discrimination

In order for Raneri to survive summary judgment on her claims of gender discrimination, she must satisfy the *McDonnell Douglas* test. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Raneri's claims are subject to a three-step analysis:

First, the plaintiff must establish a prima facie case of unlawful discrimination by showing that 1) she is a member of a protected class 2) who performed her job satisfactorily (or who was qualified for a new position) 3) who was discharged (or not offered the new position) 4) under circumstances giving rise to an inference of discrimination (or retaliation).

Second, if the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. . . .

Third, if the defendant articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted . . . [and] the plaintiff must then show, on the basis of all the evidence presented and without the benefit of any presumptions, that it is more likely than not that the employer's decision was motivated at least in part by discrimination.

*Stratton v. Dep't for the Aging of the City of New York,* 132 F.3d 869, 879 (2d Cir. 1997) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817).

The defendants concede that Raneri was a member of a protected class and that she was not promoted either in 2005 or 2007. Defendants' Memorandum of Law 13 ("Defs.' Mem.") [Doc. No. 17]. Defendants, however, argue that the evidence presented does not give rise to an inference of discrimination, apparently discounting that, in summary judgment, the Court is required to draw all reasonable inferences in favor of Raneri.

Raneri has presented considerable evidence of McCarey's treatment of female employees at the Department. Raneri's Facts ¶¶ 89–113; Drita Nicaj's Affirmation Ex. 3, 6–7, 10–15, 58–59 ("Nicaj's Affirm.") [Doc. No. 22]. Viewed in the light most favorable to Raneri, it is entirely plausible that a reasonable jury could find that such treatment was discriminatory and based on gender, and thereby satisfy the first step in the *McDonnell Douglas* analysis.

■ The *McDonnell Douglas* analysis merely requires the defendants to "articulate" a legitimate reason for the appointments; it does not require proof or further evidence supporting the assertion that the appointment was made on the basis of these legitimate reasons. The defendants meet this burden by stating that Milby

was appointed initially because he held a degree in Geographic Information Systems, and that Breitenfield was subsequently appointed because he finished first in the tax map coordinator exam. Defs.' Mem. 14–15. Therefore, the second step being satisfied, the presumption of discrimination drops out of the case and Raneri must prove, upon consideration of all the evidence and considering the balance of probabilities, that the legitimate reasons advanced by the defendants are "pretext" and that discrimination was involved in the appointments.

■ Raneri has presented evidence that, when viewed in a light most favorable to her, would allow a reasonable jury to conclude that McCarey had unlawfully considered her gender when deciding not to appoint Raneri to the position, either provisionally in 2005 or permanently in 2007. *See* Raneri's Facts ¶¶ 89–113; Nicaj's Affirm. Ex. 3, 6–7, 10–15, 58–59.

Raneri also points to evidence which would allow a reasonable jury to find that the "legitimate reasons" behind the appointments of Milby and Breitenfield constituted mere pretext. These reasons include: Raneri had the greatest tenure and therefore the greatest experience in the Department, Raneri had a Bachelor of Science degree, albeit in Psychology; Raneri had received strong recommendations from the outgoing tax map coordinator, among others; Milby had far less experience in the Department than Raneri; and McCarey cited Breitenfield's performance on the civil service exam and other previous exams, but admitted that if Milby had been eligible for appointment after that exam he would have retained the position. Raneri's Facts ¶¶ 166–68, 169a–170, 172, 174–75, 177–79; Raneri's Mem. 10–11; Nicaj's Affirm. Ex. 3, 6–7, 10–15, 53–63.

Viewing all the evidence in the light most favorable to Raneri, a reasonable jury could find that the failure to appoint Raneri was motivated in part by discrimination, and that the reasons offered do not legitimize the appointments of either Milby or Breitenfield.

It should be noted again that damages arising out of the appointment of Milby are only recoverable under Raneri's Section 1983 and New York Law claims, and not under Title VII, due to the time limits applied. *See supra,* Section II.B. Claims arising from Breitenfield's appointment survive on all three bases. *See id.*

### F. Alleged Title VII and NYSHRL Retaliation

Raneri alleges that McCarey's failure to appoint her to the post of tax map coordinator was, inter alia, in retaliation for earlier complaints she made against him, claiming discrimination.

■ In order to establish a prima facie claim of retaliation, Raneri must show that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal link between the protected activity and the adverse employment action." *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996). The defendants concede that Raneri satisfies the first three requirements of the test. Defs.' Mem. 22. The defendants, however, argue that there is no causal connection between the filing of the complaint by Raneri and the later failure to appoint her. Defendants' Reply Memorandum of Law 4–5 ("Defs.' Reply Mem.") [Doc. No. 32].

1. Failure to Appoint in September 2005

■ The defendants argue that no evidence is presented to support a claim of retaliation for Milby's appointment other than the proximity of the complaint to the

appointment. *Id.* at 5. Where "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" is the basis for the claim, the proximity must be "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Notwithstanding this, courts "[have] not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Coop. Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001).

■ In this instance, the failure to promote Raneri five months after the lodging of her complaint could lead a reasonable jury to conclude that retaliation played some part in the decision, notwithstanding the invitation which was extended to all technicians to apply at that time. McCarey's state of mind from the time of the complaint up to the time of Milby's appointment is a question of fact for a jury to determine. This claim is actionable under N.Y. Exec. Law § 296(7), but not Title VII, due to the statute of limitations. *See supra,* Section II.B.

### 2. Failure to Appoint in January 2007

While the defendants assert that the elapsed period between the lodging of the complaint in April 2005 to the permanent appointment of Breitenfield in January 2007 is too long to maintain a claim of retaliation, Defs.' Mem. 22–23, it remains that a reasonable jury could find otherwise. Raneri states that she continued to lodge complaints during the period up to the appointment of Breitenfield, one of which was noted in a weekly progress report for July 25, 2006. Raneri's Mem.

19–20; Raneri Dep. 209–11; Nicaj Affirm. Ex 55.

In failure to promote cases in particular, "the opportunities for retaliation do not necessarily immediately present themselves," and may be delayed. *Mandell v. County of Suffolk,* 316 F.3d 368, 384 (2d Cir.2003). The additional complaint lodged by Raneri further supports an inference being drawn in her favor. Raneri's claims of retaliation for the appointment of Breitenfield under Title VII and N.Y. Exec. Law § 296 therefore survive summary judgment.

### G. Hostile Work Environment Claims

Raneri asserts that McCarey, through discrimination, created a hostile work environment. The defendants correctly concede that Title VII allows for claims against Orange County, while Section 1983 allows for individual claims against McCarey, and that the standard of analysis is the same for both claims. Defs.' Mem. 16.

In order to prove these claims, Raneri must produce persuasive evidence that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir.2006) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ In examining whether there was a hostile work environment, "we look to the record as a whole and assess the totality of the circumstances" and "the extent to which the conduct occurred because of the plaintiffs' sex." *Demoret,* 451 F.3d at 149. To survive summary judgment, the evidence must allow a reasonable jury to draw a reasonable inference that McCarey's behavior created a hostile work envi-

ronment at the Department. To defeat the statute of limitations by applying the continuing violation theory, the evidence must show that such a hostile environment was created prior to, and continued into, the period after February 4, 2005. Failure to prove this will limit the claims to the period beginning February 4, 2005. *See supra,* Section II.B.

■ Raneri has alleged and provided evidence of many individual instances of hostility towards female employees within the Department, including particular comments made to female members of staff. Raneri's Facts ¶¶ 89–113; Nicaj's Affirm. Ex. 3, 6–7, 10–15, 58–59. She also argues that McCarey's general treatment of female employees was discriminatory and contributed to such a hostile environment. *Id.* The alleged behavior reduced one female member of the staff to tears on a number of occasions. Raneri's Facts ¶ 144; Nicaj Affirm. Ex. 13–14. When the evidence is viewed in totality, and in a light most favorable to Raneri, it is plausible that a reasonable jury could find that McCarey fostered a hostile environment for female employees.

Therefore, whether McCarey created a hostile work environment is question of fact for a jury. With respect to damages, if Raneri cannot prove the "continuing violation theory"—i.e., that the hostile work environment existed prior to February 4, 2005 and continued—then these Section 1983 claims will be limited to those beginning after February 4, 2005. *See supra,* Section II.B. The Title VII claims regarding hostile work environment claims are limited to the period beginning August 9, 2006. *See supra,* Section II.B.

## H. Claims against Orange County under 42 U.S.C. § 1983

A municipality may be held liable for the actions of its employees if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A custom or policy may exist (1) as an "explicitly adopted rule or regulation;" (2) pursuant to an established practice or custom; or (3) if a final policymaker of the entity personally violated a plaintiff's constitutional rights. *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 870–71 (2d Cir.1992); *see St.Louis v. Praprotnik,* 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107.

Raneri does not seek to assert that the County had an official policy of discrimination in place. Raneri's Mem. 20–22. Indeed, the County maintains a written anti-discrimination policy, Raneri Facts ¶¶ 114–15. Rather, Raneri argues that, for the purposes of this claim, McCarey was the "final policymaker" within the Department, The identification of those officials whose decisions represent the official policy of the County is a legal question to be resolved by the Court, not a fact issue for the jury, *Jeffes v. Barnes,* 208 F.3d 49, 57–58 (2d Cir.2000). "The burden of showing that an official is the final policymaker in a given area rests on the plaintiff." *Purdy v. Town of Greenburgh,* 178 F.Supp.2d 439, 444 (S.D.N.Y.2002) (citing *Jeffes,* 208 F.3d at 57–58).

■ McCarey was appointed to the position of Director in or around February 2000. Defs.' Facts ¶ 4. McCarey began a complete overhaul and modernization of the Department upon his arrival. *Id.* ¶ 8. Corda stated that the Department was McCarey's operation, that he was in charge within the Department and nothing could change the way he ran it. Raneri's Facts ¶¶ 122, 135. Corda also stated that he had no influence in promotional deci-

sions in the Department, and McCarey later admitted that he alone decided on promotions within the Department. Defs.' Facts ¶ 49; Nicaj Affirm. Ex. 56, 136–37. McCarey also admitted that he did not consult with anyone before the appointment of either Milby or Breitenfield. Raneri's Mem. 21; Nicaj Affirm. Ex. 56, 136–37, On the matter of the appointment of Milby in 2005, McCarey "advised" the County's Commissioner of Finance of his decision. There is no evidence adduced that he invited either input or comment on the appointment. Raneri's Facts ¶ 173.

 A municipal official "need not be a municipal policymaker for all purposes .... he must be responsible under state law for making policy in that area of the [municipality's] business." *Jeffes,* 208 F.3d at 57 (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)) (emphasis added).

Whatever the official policy of Orange County, on the evidence presented, it failed to ensure that its anti-discrimination policy was followed in the Department and instead granted full authority to McCarey to determine department policy on operations and promotions.

On the basis of the foregoing, this Court rules as matter of law that, for all internal purposes within the Department, McCarey was the final policymaker. Therefore, if Raneri proves that McCarey engaged in discrimination through his control or management of the Department or promotional decisions taken within the Department, Orange County may be held liable for the same. For these reasons, Raneri's claims against Orange County under 42 U.S.C. § 1983 survive.

### I. Claims of Aiding and Abetting Discrimination

 Under New York State Executive Law § 296(6), it is "unlawful discriminatory practice for any person to aid, abet ... or coerce the doing of any of the acts forbidden under this article, or attempt to do so." Liability may be imposed on the County where it is established that there was a knowledgeable and intentional participation on its part in the unlawful conduct charged. N.Y. Exec. Law § 296(6). Raneri fails to show that the County "itself in any way, encouraged, condoned or approved [McCarey's] illegal acts." *See State Div. of Human Rights on Complaint of Greene v. St. Elizabeth,* 66 N.Y.2d 684, 687, 496 N.Y.S.2d 411, 487 N.E.2d 268 (1985). Therefore, claims of aiding and abetting against the County are dismissed.

 An individual cannot aid and abet his own alleged discriminatory conduct. *Strauss v. New York State Dep't Of Educ.,* 26 A.D.3d 67, 73, 805 N.Y.S.2d 704 (N.Y.App.Div.2005). As McCarey's alleged actions give rise to the discrimination claim, he cannot be held liable for aiding and abetting, and this claim fails.

### III. CONCLUSION

For the reasons stated above, summary judgment shall enter for Corda on all claims against him, and for all defendants on the claims brought under the ADEA, as well as the claims for aiding and abetting. As limited by the language in this opinion, the motion for summary judgment is, in all other respects, **DENIED.**

**SO ORDERED.**