# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2012
_____

Bryce Markham

*Plaintiff - Appellant*

v.

Tony Wertin

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: November 15, 2016
Filed: June 29, 2017
_____

Before RILEY,[1] Chief Judge, WOLLMAN and KELLY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Bryce Markham filed a petition in Missouri state court against the International
Brotherhood of Electrical Workers Local 545 (Local 545) and Tony Wertin, alleging

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United
States Court of Appeals for the Eighth Circuit at the close of business on March 10,
2017. He has been succeeded by the Honorable Lavenski R. Smith.

that Local 545 had violated the Missouri Human Rights Act (MHRA) by failing to accommodate Markham's disability, by discriminating against him based on his disability, and by retaliating against him for reporting his disability and seeking accommodation. The petition further alleged that Wertin had aided and abetted Local 545's discriminatory and retaliatory conduct. Local 545 removed the action to federal district court and thereafter moved to dismiss. Markham moved to remand the case and to amend the petition. The district court determined that Markham's claims were completely preempted under § 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a), and § 9(a) of the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a), and that the statute of limitations had expired on those federal claims. The district court thus denied Markham's motion to remand and his motion to amend the petition and granted Local 545's motion to dismiss. Markham appeals from the dismissal of his aiding-and-abetting claim against Wertin, the denial of his motion to remand, and the denial of his motion for leave to amend. We reverse and remand.

## I. Background

Local 545 offers a joint apprenticeship and training program. Participants must complete the program before they can become journeymen or be eligible for full union representation. Markham alleged that Wertin was the supervisor of the apprenticeship and training program and an authorized agent of Local 545. According to Markham, Wertin and members of the Joint Apprenticeship and Training Committee (JATC) assign apprentices to various companies for on-the-job training.

Markham enrolled in the apprenticeship and training program in 2008. In May 2013, he lost consciousness while on a lunch break during an on-the-job training assignment. Markham returned to work later that day, but he called in sick the next day. Wertin thereafter informed Markham that he had been terminated from the

assignment and instructed Markham to submit a doctor's note documenting the reason for his absence, which Markham did.

Markham suffers from Crohn's Disease. His doctor's note indicated that Markham had tested positive for tetrahydrocannabinol (THC), the active compound in marijuana, but also explained that Markham had been prescribed a legal synthetic version of THC to treat his Crohn's Disease. A urinalysis indicated no presence of marijuana in Markham's system.

Markham was placed on probation on June 11, 2013. He was told that the reason for the probation was that two companies had terminated his on-the-job training assignments "for cause," but he was not told what the cause was. Markham expressed to Wertin his belief that he had been placed on probation because of his illness. Thereafter, Markham was not assigned to any on-the-job training until January 2014, and even then his training opportunities were "drastically reduced compared to other members of the Program, including those with fewer hours completed." Compl. ¶ 39. Moreover, when he was given on-the-job training assignments, "it was for very small jobs, or for jobs that did not provide actual training, but rather relegated [Markham] to doing menial work for others." Id. ¶ 40. On at least one occasion, Markham was unavailable for an assignment because he was not given adequate notice.

Markham was unable to accrue on-the-job training hours as quickly as his peers. The JATC removed Markham from the program on June 9, 2014, before he had completed it and "at the suggestion and/or direction of Wertin." Id. ¶ 44. Although Markham attended two union meetings in attempts to appeal his dismissal, he was never readmitted to the apprenticeship and training program.

Markham filed a petition in the Circuit Court of Buchanan County, Missouri, alleging the four counts mentioned above. Markham alleged that Wertin aided and abetted Local 545's acts of discrimination and retaliation, claiming that:

> [Markham's] disability, report of his disability, and his request for accommodation for his disability were all at least a contributing factor in Defendant Wertin's aiding, abetting, compelling, and coercion of Defendant IBEW to fail to place [Markham] for on-the-job training, to terminate [Markham's] participation in the Program, and to fail to re-admit [Markham] to the program.

Id. ¶ 102.

After removing the action to federal district court, Local 545 moved to dismiss the action, submitting in support of the motion the relevant collective bargaining agreement (CBA) and the statement of policies for apprentices, which Local 545 maintained was incorporated by reference into the CBA. Wertin answered the petition, denied the allegations that he aided and abetted any violation of Markham's rights, and later filed a brief in support of removal and dismissal of Markham's lawsuit. Markham moved to remand the case to state court and later sought leave to amend the petition.

The CBA at issue in this case includes a section regarding the apprenticeship and training program. Article 5 of the CBA sets forth the terms, conditions, and responsibilities of the JATC, which is "responsible for the training of apprentices." The JATC has "full authority for issuing all job training assignments and for transferring apprentices from one employer to another." Article 5 states that, if the JATC is unable to resolve any issue concerning an apprentice or an apprenticeship matter, the matter is referred to the Labor-Management Committee for resolution pursuant to the grievance procedure set forth in a different section of the CBA. Article 5 further provides that "[a]n apprentice may have their indenture canceled by

the JATC at any time prior to completion as stipulated in the registered standards" and that individuals terminated from the program shall not receive assignments "unless they are reinstated in apprenticeship as per the standards."

Those standards set forth a non-exhaustive list of "causes for which the [JATC] has the authority to cancel the agreement of an apprentice." The standards also explain that each apprentice is indentured to the JATC, that the JATC is responsible for placing apprentices with employers, that the training director issues the assignment for work, and that the JATC has "full power to act on all matters pertaining to transferring apprentices from one job or shop to another." Specifically, an apprentice is assigned to a contractor and remains with the contractor until the apprentice is laid off by the contractor or removed by the JATC. Thereafter, the training director assigns the apprentice to another contractor according to the availability of work. The standards include the JATC's substance abuse testing policy and the length of an apprentice's probationary period.

The district court concluded that Markham's claims implicated the CBA and the accompanying standards for apprentices. "[Markham] would necessarily need to establish, *inter alia*, that he met certain qualifications, address whether reasonable accommodations could be made pursuant to these agreements, and whether probation was reasonable. In short, the Court necessarily would be required to refer to and interpret these documents to determine what actions, if any, Defendant Union could take as to [Markham]." D. Ct. Order of March 29, 2016, at 10. The district court determined that Markham's claims were substantially dependent upon an analysis of the CBA and thus were completely preempted by § 301(a) of the LMRA. In addition, the district court concluded that Markham's claims of discrimination were completely preempted by § 9(a) of the NLRA because they were, in effect, claims of breach of Local 545's duty of fair representation. Because Markham's claims constituted "a hybrid § 301/duty of fair representation action," the district court dismissed the suit

as barred by the six-month statute of limitations that applies to such claims and denied as futile Markham's motion for leave to amend. Id. at 14.

## II. Discussion

A defendant may remove a civil action from state to federal court only if the action originally could have been filed in federal district court. See 28 U.S.C. § 1441(a). "Absent diversity of citizenship, federal-question jurisdiction is required." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. It is well settled "that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption." Id. at 393.

Congress, however, "may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Williams, 482 U.S. at 393. This "complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA." Id.; see Taylor, 481 U.S. at 64 (noting that "[f]or 20 years, this Court has singled out claims pre-empted by § 301 of the LMRA for such special treatment"). Our court has not decided whether § 9(a) of the NLRA completely preempts state-law discrimination claims, although we have suggested that it does not. Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 949, 309 F.3d 1051, 1053 (8th Cir. 2002); see also Johnson v. MFA Petroleum Co., 701 F.3d 243, 248 (8th Cir. 2012) (listing the areas of "special federal interest" in which the Supreme Court and this court have found complete preemption).

Markham argues that the district court erred in concluding that his aiding-and-abetting claim was completely preempted by § 301(a) of the LMRA and by § 9(a) of the NLRA. He contends that the claim must be remanded to state court because the federal district court did not have jurisdiction over this state-law claim between nondiverse parties.

### A. Complete Preemption Under § 301(a) of the LMRA

Section 301(a) provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has said that § 301(a) is "more than jurisdictional," however, in that it "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 451 (1957).

> [T]he subject matter of section 301(a) is peculiarly one that calls for uniform law. The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. . . . [W]e cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.

Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962) (internal quotation marks and citations omitted). Accordingly, "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Williams, 482 U.S. at 394 (quoting Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler, 481 U.S. 851, 859 n.3 (1987)).

The dispute in this case is whether Markham's aiding-and-abetting claim against Wertin is substantially dependent on analysis of the CBA, for if a state-law claim is "inextricably intertwined with consideration of the terms of the labor contract," it is preempted. See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985) ("If the state tort law purports to define the meaning of the contract relationship, that law is preempted."). The Supreme Court has "underscored the point[, however,] that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and [the Court has] stressed that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward." Livadas v. Bradshaw, 512 U.S. 107, 123-24 (1994) (internal citations omitted) (citing Lueck, 471 U.S. at 213; Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988)). "[W]hen the meaning of contract terms is not the subject of dispute," mere reference to or consultation of a CBA "plainly does not require the claim to be extinguished." Id. at 124 (citing Lingle, 486 U.S. at 413 n.12). Thus, we have said that "the claim must require the interpretation of some specific provision of a CBA; it is not enough that the events in question took place in the workplace or that a CBA creates rights and duties similar or identical to those on which the state-law claim is based." Meyer v. Schnucks Markets, Inc., 163 F.3d 1048, 1051 (8th Cir. 1998).

We begin our analysis by considering Markham's aiding-and-abetting claim against Wertin. See Trs. of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc., 450 F.3d 324, 331 (8th Cir. 2006) ("The proper starting point for determining whether interpretation of a CBA is required in order to resolve a particular state law claim is an examination of the claim itself."). Under section 213.070(1) of the Missouri Revised Statutes, it is an unlawful discriminatory practice "[t]o aid, abet, incite, compel, or coerce the commission of acts prohibited under this chapter." See Bradley v. Ray, 904 S.W.2d 302, 315 (Mo. Ct. App. 1995) (explaining that the tort of aiding and abetting requires that "the defendant must affirmatively act

to aid the primary tortfeasor"); cf. State v. Clark, 596 S.W.2d 747, 751 (Mo. Ct. App. 1980) (explaining that "to 'aid and abet' in the commission of a crime, it is necessary that a defendant associate himself in some way with the principal in bringing about the commission of a crime"). To state a claim under section 213.070(1), Markham must show that Local 545 committed acts prohibited under the MHRA and that Wertin aided and abetted the commission of those acts. See Matthews v. Eichorn Motors, Inc., 800 N.W.2d 823, 830 (Minn. Ct. App. 2011) (explaining that "a viable discrimination claim is a prerequisite to a claim of aiding and abetting discrimination" under a similar provision in the Minnesota Human Rights Act); see also Johnson v. BE & K Constr. Co., 718 F. Supp. 2d 988, 1009 (S.D. Iowa 2010) (holding that the plaintiff's aiding-and-abetting claim under the Iowa Civil Rights Act failed "because the Court ha[d] found no [underlying] unfair or discriminatory practice" by the employer); Strauss v. N.Y. State Dep't of Educ., 26 A.D.3d 67, 73 (N.Y. 2005) ("Where no violation of the [New York] Human Rights Law by another party has been established, we find that an individual employee cannot be held liable for aiding or abetting such a violation."). Accordingly, we must consider whether § 301(a) of the LMRA completely preempts Markham's three claims against Local 545 to determine whether it preempts his aiding-and-abetting claim against Wertin.[2]

In counts one and two of his petition, Markham alleged that Local 545 failed to accommodate him and discriminated against him, in violation of the MHRA. See

---

[2]We note that Markham's aiding-and-abetting claim against Wertin can survive, even though Markham has not challenged the dismissal of his principal claims against Local 545. Those claims were dismissed on the grounds of complete preemption and the federal statute of limitations. Setting aside the fact that any such federal claims would be time-barred under federal law, there has been no determination on the merits of Markham's state-law claims against Local 545—i.e., whether Local 545 discriminated or retaliated against Markham. Accordingly, while Markham will have to prove an underlying violation of the MHRA by Local 545 to prove his aiding-and-abetting claim against Wertin, his decision to abandon the claims against Local 545 does not preclude his state-law claim against Wertin.

Mo. Rev. Stat. § 213.055.1(2) (providing that it is an unlawful employment practice for any labor organization "to discriminate against any individual because of his . . . disability in admission to, or employment in, any program established to provide apprenticeship or other training"). We address these claims together because "[t]he MHRA makes the question of whether the job can be performed with or without reasonable accommodation a part of the test to determine whether an employee is disabled." See Medley v. Valentine Radford Commc'ns, Inc., 173 S.W.3d 315, 319-20 (Mo. Ct. App. 2005) (addressing together plaintiff's claims of discrimination and refusal to accommodate); see also Mo. Rev. Stat. § 213.010(4) (defining "disability" as an impairment that substantially limits a major life activity and that "with or without reasonable accommodation does not interfere with performing the job"). To establish a claim of disability discrimination, Markham must prove that he is disabled, that Local 545 took an adverse action against him, and that his disability was a factor in the adverse action. See Gamber v. Mo. Dep't of Health & Senior Servs., 225 S.W.3d 470, 475 (Mo. Ct. App. 2007); see also Medley, 173 S.W.3d at 320.

Wertin argues that Markham's claims are completely preempted for the reasons set forth in Davis v. Johnson Controls, Inc., 21 F.3d 866 (8th Cir. 1994). We disagree. The plaintiff in Davis filed suit in federal district court, alleging that his employer had discriminated against him by not permitting him to return to work after his physical condition improved, in violation of section 213.055 of the Missouri Revised Statutes. Id. at 867. The employer moved for summary judgment, arguing that the plaintiff would have to show that the employer could have reasonably accommodated his request to return to work and that such a showing would require the interpretation of provisions of the CBA related to seniority rights. Id. at 868. The plaintiff's reinstatement would require "relocation . . . to a position commensurate with his physical limitations." Id. In response, the plaintiff argued that the collective bargaining agreement allowed for transfer without alteration of seniority rights. Id. We held that the claim was preempted under § 301(a) of the LMRA because the plaintiff's reinstatement "would require an examination of the seniority rights of both

Davis and other employees under the collective bargaining agreement" and because "Davis's contention that the collective bargaining agreement allows for transfer without alteration of seniority rights . . . would perforce require interpretation of the agreement." Id. at 868.

As an initial matter, the employer in Davis raised preemption as a substantive defense to the plaintiff's state-law claim. There was no dispute about removal jurisdiction in Davis: the plaintiff there filed suit in federal district court. The Davis court thus did not address the complete preemption question raised here. Moreover, to the extent Davis applies, the facts are distinguishable. Markham alleged that he could perform the job with or without reasonable accommodation and that he "requested the reasonable accommodation that he be allowed to continue taking his [prescription medication]." Compl. ¶ 51. Taking those allegations as true, whether Markham is disabled and whether he could be reasonably accommodated are not substantially dependent on analysis of the CBA.

Wertin argues that the discrimination claim is nonetheless preempted because a court will have to interpret the CBA to determine what right Markham had to training assignments and what duties were imposed upon Local 545 to make those assignments. The CBA and related standards do not set forth the manner in which the JATC places apprentices in job training assignments. Instead, the documents speak generally about the JATC's authority and responsibilities. The CBA gives the JATC authority to issue assignments, to handle any issues concerning apprenticeship matters, and to cancel the indenture of apprentices. The related standards reiterate that the JATC places apprentices with employers, transfers apprentices from one job to another, and may cancel apprenticeship agreements. Markham has not challenged the JATC's authority to place, transfer, or terminate his agreement. He has alleged that his disability contributed to Local 545's failure to place him and its decision to terminate him. We thus view the legal character of the discrimination claims as independent of the rights established in the CBA and related standards. While the

-11-

claim may require a court to refer to or consult the CBA and related standards, it is not substantially dependent thereon.[3]

Markham also argues that the district court erred in failing to separately consider his underlying retaliation claim against Local 545, which arises under section 213.070(2) of the Missouri Revised Statutes. "The prima facie case for retaliation requires the employee to show that (1) [he] complained of discrimination; (2) the employer took adverse action against [him]; and (3) the adverse action was causally linked to the discrimination complaint." Medley, 173 S.W.3d at 325. A retaliation claim under section 213.070(2) is thus different from a discrimination claim under section 213.055: a plaintiff need not prove that he was disabled to establish retaliation, but rather must prove that he complained of discrimination. See McCrainey v. Kansas City Mo. Sch. Dist., 337 S.W.3d 746, 754 (Mo. Ct. App. 2011) ("[A] plaintiff need only have a good faith, reasonable belief that the conduct he or she opposed was prohibited by the MHRA in order to prevail on a retaliation claim.").

We hold that § 301(a) of the LMRA does not preempt Markham's section 213.070(2) retaliation claim. In so holding, we reiterate that Markham's claim that Local 545 retaliated against him by failing to place him in training assignments does not substantially depend on an analysis of the CBA. We also find instructive our cases addressing preemption of retaliation claims asserted under Missouri Revised Statutes section 287.780, "which provides a civil cause of action to employees who have been 'discharge[d] or in any way discriminate[d] against' for exercising any of their rights under Missouri worker's compensation law." Johnson v. Agco Corp., 159

---

[3]During oral argument, Wertin's counsel referred to training assignments as "job referrals." We note that Article IV of the CBA sets forth the procedure for selection and referral of applicants for employment. The detail and specificity of the CBA with respect to Local 545's job-referral procedure must be contrasted with the CBA's general grant of authority to the JATC to manage the apprenticeship and training program.

F.3d 1114, 1115 (8th Cir. 1998) (alteration in the original) (quoting Mo. Rev. Stat. § 287.780).  In those cases, we have held that the doctrine of complete preemption does not apply so as to give a retaliatory discharge claim "the status of a § 301 claim from the beginning."  Id. (citing Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1244 (8th Cir. 1995)).  Because Markham's state-law claim of retaliation "can be resolved without interpreting the [CBA] itself," the retaliation claim "is 'independent' of the agreement for § 301 pre-emption purposes."  See Lingle, 486 U.S. at 410.

Having determined that § 301(a) does not completely preempt Markham's discrimination and retaliation claims against Local 545, we likewise conclude that his aiding-and-abetting claim against Wertin is not completely preempted.  Wertin's defenses to the claim might refer a court to the CBA and related statement of policies, which set forth specific grounds of just cause for termination.  Any such defense, however, "is not enough to confer federal jurisdiction on the ground of complete preemption."  Agco Corp., 159 F.3d at 1116 ("[T]he presence of a federal question, even a § 301 question, in a defensive argument" does not render a cause removable: "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." (alteration in original) (quoting Williams, 482 U.S. at 398-99) (emphasis in Williams)).

## B.  Complete Preemption Under § 9(a) of the NLRA

"When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty, implied from its status under § 9(a) of the NLRA as the exclusive representative of the employees in the unit, to represent all members fairly."  Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44 (1998) (citing Ford Motor Co. v. Huffman, 345 U.S. 330, 337 (1953); Vaca v. Sipes, 386 U.S. 171, 177 (1967)).  That duty imposes upon the labor organization "a statutory obligation to serve the interests of all members without hostility or

discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca, 386 U.S. at 177. A breach of the duty of fair representation occurs when "a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Id. at 190.

Wertin argues that "[s]tate law actions attempting to assert breach of the duty of fair representation by a labor organization and/or its agents are completely preempted by federal law." Appellee's Br. 15. Neither the Supreme Court nor this court has decided the precise issue, although we have said that "a plaintiff may bring an action under Title VII and the MHRA if his union, for discriminatory reasons, breaches its duty to represent him fairly in the handling of his complaints and grievances." Maegdlin, 309 F.3d at 1053 (citing 42 U.S.C. § 2000e-2(c)(1); Mo. Rev. Stat. § 213.055.1(2); Carter v. Chrysler Corp. 173 F.3d 693, 703-04 (8th Cir. 1999); Marquart v. Lodge 837, Int'l Ass'n of Machinists & Aerospace Workers, 26 F.3d 842, 845-46 (8th Cir. 1994)). We also have allowed state and federal discrimination claims to proceed against unions in federal court. See, e.g., Carter v. United Food & Commercial Workers, Local No. 789, 963 F.2d 1078, 1082-83 (8th Cir. 1992) (reversing grant of summary judgment in favor of the union on plaintiff's discrimination claims under Title VII and the Minnesota Human Rights Act); see also Eliserio v. United Steelworkers of Am. Local 310, 398 F.3d 1071, 1080 (8th Cir. 2005) (reversing the grant of summary judgment in favor of the union on plaintiff's Title VII and 42 U.S.C. § 1981 hostile-work-environment and retaliation claims and instructing the district court to reconsider its supplemental jurisdiction over the associated state-law claims under the Iowa Civil Rights Act).

Wertin contends that the duty of fair representation completely preempts Markham's state-law claims because "[t]hat duty, imposed by federal labor law, completely occupies the area of law regarding the obligation of the Union and its agents toward members to act in a non-discriminatory manner." Appellee's Br. 28. We reject this argument, for although "[c]ongressional power to legislate in the area

-14-

of labor relations . . . is long established[,] Congress . . . has never exercised authority to occupy the entire field in the area of labor legislation." Lueck, 471 U.S. at 208. The question whether Markham's claims of discrimination and retaliation are preempted by § 9(a) of the NLRA "is one of congressional intent." Id. ("The purpose of Congress is the ultimate touchstone." (quoting Malone v. White Motor Corp. 435 U.S. 497, 504 (1978))). Congress has not said whether and to what extent it intended § 9(a) of the NLRA to completely preempt such state-law claims, nor can we "discern from the totality of the circumstances that Congress has sought to occupy the field to the exclusion of the States." See id. (quoting Malone, 435 U.S. at 504). Moreover, Wertin has not shown that the discrimination and retaliation claims conflict with § 9(a) or otherwise frustrate the federal scheme. See id. He argues instead that the discriminatory acts alleged by Markham "necessarily implicate" and "at least arguably violate the Union and Wertin's duty of fair representation." Appellee's Br. 28. Without clear indication from Congress or any apparent conflict between Markham's state-law claims and Local 545's federal duty of fair representation, we cannot say that the preemptive force of § 9(a) "is so extraordinary" that it converts Markham's state-law complaint "into one stating a federal claim for purposes of the well-pleaded complaint rule." See Williams, 482 U.S. at 393 (internal quotation marks and citation omitted).

Wertin's reliance on Vaca v. Sipes, 386 U.S. 171 (1967), is misplaced. "Vaca was not a case of complete preemption concerning subject matter jurisdiction in federal court, but instead addressed whether ordinary preemption required the application of federal law *in state court* . . . ." Barbour v. Int'l Union, 640 F.3d 599, 634 (4th Cir. 2011) (en banc) (Agee, J., concurring). Ordinary preemption "is distinct from the jurisdictional doctrine of complete preemption used to remove state claims to federal court." Superior Waterproofing, 450 F.3d at 329 n.3. It "is a federal defense that exists where a federal law has superseded a state law claim." MFA Petroleum, Inc., 701 F.3d at 248. Wertin is free to assert a preemption defense in state court after the case is remanded, but "the presence of a federal question . . . in a

defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." Williams, 482 U.S. at 398-99.[4]

Conclusion

Because Markham's state-law claims are not completely preempted by § 301(a) of the LMRA or § 9(a) of the NLRA, the district court lacked removal jurisdiction over this case. We therefore vacate the district court's order of dismissal and remand the case to the district court with directions that it remand the case to the state court from which it was removed. In light of our disposition of this appeal, we do not reach the question whether the motion for leave to amend was properly denied.

————————————————

[4]Wertin cites Richardson v. United Steelworkers of America, 864 F.2d 1162 (5th Cir. 1989), and BIW Deceived v. Local S6, Industrial Union of Marine & Shipbuilding Workers of America, 132 F.3d 824 (1st Cir. 1997), in support of his argument that NLRA § 9(a) completely preempts Markham's state-law claims of discrimination and retaliation. We find those cases factually distinguishable from the case before us and thus inapposite. Whatever preemptive force § 9(a) might have, it does not completely preempt the claims that Markham has alleged.

-16-