HOWARD F. SACHS, UNITED STATES DISTRICT JUDGE
*715 This disability discrimination claim has very unusual features. It will be ruled in favor of defendant, Ford Motor Co., on a quite unappealing theory, required in my view by controlling case-law. It does, however, seem very debatable on the ultimate merits, if we were to get past the current issue.
Plaintiff, Jeremy Heuton, was born without a left hand, but with an appendage below the elbow that he has made useful-so much so that he denies he has a disability, and is currently employed in assembly line work elsewhere. This is the type of work for which Ford rejected him. The difference is that Ford's assembly line is constantly moving. Plaintiff tested for timely working, and barely passed Ford's standards. But he concedes he has a problem with speedy performance. (Petition: ¶ 35(a) ) "plaintiff indicated to the testing proctor" that due to the absence of a left arm just below the elbow, his "agility testing may take longer").
The current issue is not about speed, nor is it ruled under current Federal law, as amended in 2008. Plaintiff sued in Missouri court under the Missouri disability statute, which is generally construed consistently with Federal case-law. But the Missouri statute was not amended to correct Federal case-law that Congress considered to unduly restrict relief for disabled individuals. After briefing I advised the parties that I considered pre-amendment Federal law would likely be used in Missouri in construing the Missouri statute (Doc. 112).
Because plaintiff does not claim to be actually disabled, the controlling question on whether he is eligible for disability classification, and thus protected by the Missouri statute, is whether he now has proof that he was "perceived" by Ford to have a disability, as that concept was dealt with before the 2008 amendments. After giving the parties an opportunity to supply citations on that question, and after oral argument, it is clear that case-law favors Ford.
Plaintiff makes little or no effort to persuade me that at the time his application was rejected, Ford viewed him as disabled from working in general. Federal Statutory protection was confined to persons unable to work "in a 'broad range of jobs' rather than a specific job" for which he had applied. Toyota Motor Mfg. Ky. Inc. v. Williams, 534 U.S. 184, 200, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). The most helpful proof available to plaintiff was Ford's expert testimony after this suit was filed that there were very many jobs at Ford she thought he could not perform, because of lack of fingering ability. Michelle Sprecker Dep. (Doc. 77-5). But there is no claim by plaintiff that he has submissible proof that Ford officials, at the time of his rejection, had an opinion that he was unemployable elsewhere at a broad range of jobs.
Plaintiff's oral argument, which has been transcribed, avoids the issue entirely, and essentially argues it was unjust of Ford to deny him employment because he could have adequately worked on the moving assembly line. Even if I assume serious injustice, unless he can show a perceived disability that would qualify him for statutory protection, he has sued on a legal theory that will not permit recovery.
There is no duty to accommodate, under Missouri law, until deciding "the threshold question of whether (a plaintiff) is disabled under the MHRA." Medley v. Valentine Radford Communications, Inc., 173 S.W.3d 315, 321 (Mo.App. 2005). As *716 further explained, summary judgment will be entered in favor of Ford.
A.
Plaintiff's Count I claim is under R.S.Mo. § 213.111 for alleged discrimination because of disability (including perceived disability). Other related claims asserted by plaintiff have been ruled (Doc. 21) or may be dealt with summarily in this dispositive order. Missouri law, like Federal law in the Americans With Disabilities Act (ADA), prohibits disability discrimination ( R.S.Mo. § 213.055 ). While the definitions are worded slightly differently, and the duty to accommodate is incorporated at an earlier portion of the Missouri Human Rights Act (MHRA) ( R.S.Mo. § 213.010(1) ) the initial consideration is necessarily whether the plaintiff has a disability (or perceived disability) that qualifies him for protection. Medley v. Valentine Radford Commun. Inc., 173 S.W.3d 315 (Mo. App. 2005). The parties acknowledge that Missouri disability law is construed as Federal case-law construes the ADA, except where there is language in the Missouri statutes that mandates different treatment. Daugherty v. City of Maryland Heights, 231 S.W.3d 814 (Mo. 2007). Pursuant to a scheduling order, allowing additional case citations on the critical issue of "perceived disability" (Doc. 112) and also in the course of oral argument, Federal cases have been the focus of attention for purposes of a ruling. Plaintiff does not offer any meaningful contention that even if Federal disability law was against him Missouri law gives him some additional grounds for recovery.
To the extent Missouri rulings have stated a test for determining disability from working, actual or perceived, they cite and follow Federal decisions. See, e.g., Daugherty, citing Brunko v. Mercy Hosp., 260 F.3d 939, 942 (8th Cir. 2001) and Epps v. City of Pine Lawn, 353 F.3d 588, 593 (8th Cir. 2003). The cited cases are governed by what may be referred to as the Supreme Court's Sutton - Toyota test, referred to in Doc. 112. This test was eliminated by 2008 amendments to the ADA, ( Milholland v. Sumner County Bd. of Education, 569 F.3d 562, 565-6 (6th Cir. 2009) ), but no persuasive argument has been made that it no longer controls MHRA cases like this one. The General Assembly has not acted to liberalize the Missouri statute.
B.
When Ford rejected plaintiff's application to be an employee on its moving assembly line, it perceived him, mistakenly he says, as having inability to grasp. He complains that he was able to perform the work, and that Ford exaggerated the problem associated with the absence of a left hand, which he says does not preclude grasping, even if it does preclude fingering. But both sides agree that he would have statutory protection only if there were a "perceived disability" by Ford. Such a disability relating to working is not focused on the job applied for, but refers to "an inability to work in a 'broad range of jobs, rather than a specific job.' " Toyota, 534 U.S., at 200, 122 S.Ct. 681, quoting from Sutton, supra. To show that Ford perceived plaintiff to be a person with such a comprehensive impairment there must be some available evidence that at or before the time of the adverse decision Ford's hiring officials had such a subjective opinion. As Judge Lungstrum explained, in a well articulated opinion, which incidentally deals with a unilateral gripping deficiency, this requirement of showing an employer's "subjective state of mind ... is 'extraordinarily difficult to prove." E.E.O.C. v. BNSF Rwy. Co., 124 F.Supp.3d 1136, 1148 (D. Kan. 2015) ; affirmed by, Equal Employment Opportunity Commission v. BNSF Railway Company, 853 F.3d 1150 (10th Cir. 2017). Requiring proof that an employer's *717 mind was wandering to industry in general adds to the burden. Limiting citations to local cases, the same lesson is advanced in Kratzer v. Polar Custom Trailers, Inc., 2003 WL 21245150 (W.D.Mo. 2003), EEOC v. Woodbridge Corp., 124 F.Supp.2d 1132 (W.D.Mo. 2000) and in a decision by Judge Eisele in Arkansas, affirmed in Mellon v. Federal Express Corp., 239 F.3d 954 (8th Cir. 2001).
In Mellon, the plaintiff was terminated from work requiring substantial lifting when injury to a wrist was so slow to heal that the employer lost patience and terminated her. The district judge found inadequate proof of unemployability in general so as to allow classification of plaintiff as being disabled, and thus subject to the protection of the ADA. I happened to be the author of the opinion affirming Judge Eisele, and some discomfort can be read into the wording that both he and the panel were "required" by prior controlling rulings to reject the disability status of plaintiff. Id. at 957.
C.
In continuing to apply Missouri law, using the Supreme Court's now outmoded restrictions on the ADA, as announced in Sutton and Toyota, it is helpful to go beyond the general descriptive words of the Court (which are sufficiently vague as to be understood in different ways) and to examine the illustrative examples referred to in Sutton, giving practical application to the concepts. The Court majority in Sutton v. United Air Lines, Inc. found the myopic job applicants short of being disabled by that condition, in connection with their working opportunities. Although rejected from service as a "global airline pilot," Justice O'Connor wrote that this did not establish that the applicants' skills would not suffice for service as "regional pilot and pilot instructor" or " 'commercial airline co-pilot or a pilot for a courier service.' " Thus, "if a host of different types of jobs are available, one is not precluded from a broad range of jobs." 527 U.S. 471, 492-93, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Plaintiff has not attempted to establish a general lack of job opportunity here, even if his condition is exaggerated (as he says) to include unilateral disability from grasping. He has offered no showing that Ford perceived him to be so restricted in employability as to qualify for statutory disability.
The tenor of available proof is somewhat to the contrary. The parties have concentrated on preparing for the ultimate merits, with plaintiff seeking to prove suitability for the moving assembly line and defendant seeking to prove lack of suitability. Thus, ironically, the prospective testimony of Ford most nearly tends to prove disability, while plaintiff's proof helps Ford as to his potential ability to work, and thus lack of disability. But even though there is a considerable debate about how serious a unilateral grasping or fingering deficiency might impact on various aspects of a moving assembly line operation, there was no evidence supporting a theory, necessary for plaintiff's case, that Ford had an opinion there were drastic limits on plaintiff's ability to work elsewhere. Absent some such proof, plaintiff's claim of perceived disability, in the sense used in Sutton and Toyota, could not go to a jury on a question that might qualify him for perceived disability status and thus consideration of the merits.
D.
Plaintiff has had a full opportunity to persuade me that he has proof to make a submissible case of perceived disability. This issue was flagged several months ago for oral argument, inviting additional citations after briefing had closed, and plaintiff has listed some cases and provided a *718 collection of documents for oral argument. While the documents might be useful to plaintiff on the merits, if he had statutory protection, there is nothing supporting a perceived disability theory under ADA law as it existed before 2008.
The two Eighth Circuit cases cited by plaintiff support defendant on the inadequacy of plaintiff's proof of perceived disability. In Ollie v. Titan Tire Corp., 336 F.3d 680 (8th Cir. 2003), the court ruled that a submissible case was made on plaintiff's disability in light of evidence that the employer "believed that Ollie could not perform any manufacturing or warehouse facility job in the Des Moines area, because of its view that all such facilities would present an environment of dust and fumes." Id. at 686. The personnel rejecting the employment application "admitted that they believed all warehouse and manufacturing jobs involved working around dust and fumes." Id. at 687. In Chalfant v. Titan Distribution, Inc., 475 F.3d 982 (8th Cir. 2007), the proof of perceived disability of the applicant was that he "would have been prevented from performing 70 percent of the jobs in the Dictionary of Occupational Titles. Thus, there was sufficient evidence from which a reasonable jury could have found that Titan did not believe that a person with Chalfant's medical impairments could work in a class of jobs or a broad range of jobs in various classes." Id. at 989. No proof of this nature is offered by plaintiff or has been developed during discovery.
Plaintiff does cite a Missouri case which apparently does not test the proof under Sutton and Toyota standards. Bowolak v. Mercy East Communities, 452 S.W.3d 688 (Mo.App. 2014). In that case an alleged inability to perform a particular job was accepted as a sound disability claim. There was no discussion of the Sutton and Toyota requirements, as in Ollie and Chalfant. Without examining briefing in that case it may be assumed that defendant treated the current post-amendment ADA statute as reflecting Missouri law. If the issue had been litigated it likely would have been mentioned in the opinion. Other Missouri case-law, including a Supreme Court case, follows the restrictive notions of Sutton and Toyota when dealing with the major life activity of "working." See, e.g., Daugherty, supra, at 821-2 ; State ex rel. Sir v. Gateway Taxi Management Co., 400 S.W.3d 478, 490 (Mo.App. 2013).
For the reasons stated I conclude that a Missouri judge would necessarily conclude that plaintiff has failed to offer submissible proof of a "perceived disability" under the Missouri statute. Summary judgment in favor of Ford will thus be granted on Count I of the petition (Doc. 1-2).
E.
Count II asserts a claim for retaliation by Ford after Ford was informed of plaintiff's "need for reasonable accommodation" in that Ford told him to "obtain a doctor's note" stating that he "could not grip" with his left hand, knowing that he "did not have a left hand." (Doc. 1-2, p. 14). Various other allegations are made "on belief" but have not been pursued and are unsupported by proposed evidence. At his deposition (Exh. A, p. 52) he asserted that the failure to hire him was a retaliatory act.
Briefing does not support a retaliation theory; that is, an adverse action taken because of plaintiff's opposition to a prohibited activity. McCrainey v. K.C. Mo. School Dist., 337 S.W.3d 746, 753 (Mo.App. 2011) ; § 213.070(2), RSMO. There was no evidence that the failure to hire was in some manner retaliatory. Nor is requesting a doctor's note an adverse action or evidencing hostility. Plaintiff barely goes through the motions to save this count of his petition. Summary judgment will be *719 granted in favor of Ford as to Count II. Count III, asserting Fraud and/or Fraudulent Misrepresentation, has been previously ruled in favor of Ford. (Doc. 21).
It is therefore ORDERED that Ford's motion for summary judgment (Doc. 59) is hereby GRANTED, and judgment shall be entered in favor of Ford.
It is further ORDERED that the remaining motions by the parties (Docs. 62 and 74) be DENIED as moot.