# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2130

_____

Jeremy Heuton

*Plaintiff - Appellant*

v.

Ford Motor Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 16, 2019
Filed: July 23, 2019

_____

Before SHEPHERD, MELLOY, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jeremy Heuton appeals the district court's[1] adverse grant of summary judgment in favor of Ford Motor Company on his claims of disability discrimination and

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

retaliation under the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010-.137.  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Heuton was born without a left forearm and hand.  But his left arm extends approximately three to four inches below his left elbow, so he has adapted to using that portion of his left arm to perform some of the functions of his missing left hand. He applied for an entry-level assembler position at Ford's Kansas City Assembly Plant (KCAP), where Ford makes vehicles on a moving assembly line.  There are over 700 such positions at KCAP.

After Heuton disclosed to Ford that he was born with one hand, Barbara Patton, a nurse at Ford's medical department, instructed Heuton to provide a doctor's note stating that he was unable to grip anything with his left hand.  Heuton told Patton he "[did not] have a left hand" but obtained the note anyway because Patton told him that, if he provided the note, Ford was "going to give [him] a [chance.]" Subsequently, Heuton submitted two doctors' notes to Ford.  The first note provided that Heuton was "cleared to work" and that he was "unable to grip" with his left hand. The second note was from Dr. Stephanie Davis, which provided that Heuton "has a congenital defect of his left upper extremity[,]" that "[h]is only limitation is an inability to grip with his left upper extremity[,]" and that "[h]e has an impressive ability to adapt and performs many tasks, jobs etc without difficulty."

After receiving these notes, Ford's medical department listed Heuton's restrictions as "Left hand: No gripping" on his Medical Examination Request Form. Dr. Kyla Kutch, the head of the medical department, then forwarded the Form to the labor relations department, headed by Ashlie O'Reilly.  Eventually, Ford decided not to hire Heuton.  O'Reilly noted on Heuton's Medical Examination Form that "[m]ost jobs @ KCAP require the use of both hands/arms (hand-start bolts, grab stock,

-2-

position job elements, etc.)" and that KCAP was "unable to accommodate a one-hand restriction @ this time."

Heuton sued Ford for disability discrimination and retaliation under the MHRA in Missouri state court. The matter was removed to federal district court on the basis of diversity jurisdiction. Both parties moved for summary judgment. After the summary judgment briefing had completed, the district court requested supplemental briefing over whether the 2008 amendments to the Americans with Disabilities Act (ADA) affected the relevant standards under the MHRA, and the court subsequently concluded that they did not. The court then scheduled oral argument on whether Heuton had shown that Ford regarded Heuton as significantly restricted from performing either a class of jobs or a broad range of jobs in various classes.

After oral argument, the district court entered summary judgment in favor of Ford. Heuton v. Ford Motor Co., 309 F. Supp. 3d 714, 719 (W.D. Mo. 2018). On Heuton's disability-discrimination claim, the court determined that Heuton, despite having a "full opportunity" to do so, failed to show Ford, "at the time of his rejection, had an opinion that he was unemployable elsewhere at a broad range of jobs." Id. at 715-18. On Heuton's retaliation claim, the court found that Heuton "barely [went] through the motions to save this count of his petition" but determined that he failed to show "an adverse action taken because of [his] opposition to a prohibited activity[,]" and found no evidence that Ford's failure to hire him was in any way retaliatory. Id. at 718. The court concluded that Ford's request for a doctor's note was neither an adverse employment action nor evidence of hostility. Id. Heuton appeals.

II.

"We review the district court's grant of summary judgment de novo[,] . . . viewing the evidence in the light most favorable to the nonmoving party

-3-

and giving that party the benefit of all inferences that may reasonably be drawn." Epps v. City of Pine Lawn, 353 F.3d 588, 591 (8th Cir. 2003).  The "moving party is entitled to summary judgment if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Id. (internal quotation marks omitted).

## A.

We begin with Heuton's disability-discrimination claim under the MHRA.  See Mo. Rev. Stat. § 213.055.1(1)(a) (prohibiting an employer from refusing to hire or discriminating against an individual on the basis of disability).  We primarily apply Missouri law but may also apply federal employment discrimination law to the extent federal law is "applicable and authoritative under the MHRA."  Gipson v. KAS Snacktime Co., 171 F.3d 574, 578 (8th Cir. 1999) (internal quotation marks omitted). Missouri courts follow federal law so long as it is "consistent with Missouri law." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 818 (Mo. 2007), abrogated on other grounds by Mo. Rev. Stat. § 213.101.4.

A disability-discrimination claim under the MHRA requires Heuton to show that (1) he has a disability, (2) Ford "took an adverse action against him," and (3) "his disability was a factor in the adverse action."  Markham v. Wertin, 861 F.3d 748, 756 (8th Cir. 2017).  Thus, as a threshold matter, we must determine whether Heuton has a disability.

Under the MHRA, a disability is defined, in relevant part, as "a physical . . . impairment which substantially limits one or more of a person's major life activities," and this definition includes "being regarded as having such an impairment[.]"  Daugherty, 231 S.W.3d at 821 (emphasis

-4-

omitted) (quoting Mo. Rev. Stat. § 213.010(4)).[2] Heuton does not contend that he has a physical impairment that substantially limits one or more of his major life activities. Instead, he alleges that he was not hired because Ford regarded him as having such an impairment. Under such a theory, Heuton "must prove that [Ford] either: (1) wrongly believed that he had an impairment that substantially limited one or more major life activities or (2) wrongly believed that an actual, non-limiting impairment substantially limited one or more major life activities." Id. (citing Mo. Code Regs. Ann. tit. 8, § 60-3.060(1)(E)).

Heuton is considered "substantially limited in performing a major life activity for purposes of the MHRA if he [is] unable to perform or significantly restricted as to the condition, manner or duration under which he could perform a particular major life activity." Id. (internal quotation marks omitted). "Employment is a 'major life activity[.]'" Id. at 821 n.9 (citing Mo. Code Regs. Ann. tit. 8, § 60-3.060(1)(C)). Heuton's "inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working." Id. (internal quotation marks omitted). Rather, a "substantial limitation on the major life activity of working means that an individual must be significantly restricted in the ability to perform *either a class of jobs or a broad range of jobs in various classes*." Id. at 821-22 (emphasis added) (internal quotation marks omitted).

1.

Heuton argues that the district court erred in using the broad-range-of-jobs standard discussed in Daugherty because the district court, sua sponte, addressed his

---

[2]At the time Daugherty was decided, the definition of "disability" appeared at Mo. Rev. Stat. § 213.010(4). The definition now appears at Mo. Rev. Stat. § 213.010(5). See S.B. 43, 99th Gen. Assemb., 1st Reg. Sess. (Mo. 2017).

disability-discrimination claim as "an impairment from working or gripping" and not as an "actual impairment of an anatomical loss of his left forearm and hand, affecting his musculoskeletal functions." Appellant's Br. 36. Citing <u>State ex rel. Sir v. Gateway Taxi Management Co.</u>, 400 S.W.3d 478 (Mo. Ct. App. 2013), Heuton argues that "when the claim is that the applicant's impairment, *other than working*, affects employability, the MHRA does not require the applicant to provide evidence of the employer's perception that the applicant is restricted from performing a class of jobs or a broad range of jobs in various classes." Appellant's Br. 30 (emphasis added).

Heuton's reliance on <u>Sir</u> is misplaced. The court in <u>Sir</u> explained that "'working' or 'employment' are not the only major life activities that affect employability" because "'ambulation'" is also a major life activity under the MHRA. 400 S.W.3d at 490. The court concluded that "evidence that complainant's stroke had impeded his ability to ambulate was sufficient evidence that complainant was substantially limited in performing the major life activity of ambulation and was sufficient standing alone to support the finding that complainant was statutorily disabled." <u>Id.</u> However, Heuton does not allege that he is substantially limited in performing the major life activity of ambulation. Nor does he identify a major life activity other than working or employment that would be sufficient, standing alone, to support his claim that he is statutorily disabled under the MHRA. Based on the applicable regulation, the most applicable major life activity in this case is employment. <u>See</u> Mo. Code Regs. Ann. tit. 8, § 60-3.060(1)(C) ("Major life activities means those life activities which affect employability such as communication, ambulation, self-care, socialization, education, vocational training, employment and transportation[.]").

While the ADA protects the loss of the operation of musculoskeletal functions for purposes of a major life activity, <u>see</u> 42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(i)(1)(ii), the MHRA does not. Under the ADA, an individual is considered disabled under a regarded-as-having-an-impairment theory "if the

-6-

individual establishes that he or she has been subjected to an action prohibited under th[e ADA] because of an actual or perceived physical . . . impairment *whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. § 12102(1)(C), (3)(A) (emphasis added). However, because Heuton sought relief under the MHRA, it is that statute, not the ADA, that governs this case. Thus, under Heuton's chosen theory of liability, even if Heuton has shown that he has a physical impairment, see Mo. Code Regs. Ann. tit. 8, § 60-3.060(1)(A)(1) (defining physical impairment to include anatomical loss affecting musculoskeletal body system), he must nonetheless show that Ford wrongly believed that physical impairment substantially limited a major life activity. See Daugherty, 231 S.W.3d at 821. In other words, under the MHRA, "the finding of an impairment [is] only the first step in finding a disability." Morris v. VCW, Inc., No. 95-0737-CV-W-3-6, 1996 WL 429014, at *2 (W.D. Mo. July 24, 1996). Because this case only involves the major life activity of working or employment, the broad-range-of-jobs standard applies and, therefore, the district court did not err in using that standard.

2.

Next, Heuton argues that the district court erred in concluding that he had not satisfied the broad-range-of-jobs standard because "Ford considered [him] permanently restricted from all 700 assembly line jobs at [KCAP.]" Appellant's Br. 56.

Heuton points to the deposition testimony of Wesley Edwards, KCAP's Senior Labor Representative, who testified that, if an employee receives a "no gripping" restriction, the employee is placed on medical, "no work available" status until such restrictions are removed because the employee cannot do the work. However, we fail to see the relevance, if any, of Edwards's statement to the central question of whether Ford regarded Heuton as significantly restricted from performing either a class of jobs or a broad range of jobs in various classes. Moreover, Heuton does not point us to

any evidence that Edwards, who answered to O'Reilly, was personally involved in the decision not to hire him.

Heuton also points to O'Reilly's notation on his Medical Examination Form, which provided that "[m]ost jobs @ KCAP require the use of both hands/arms (hand-start bolts, grab stock, position job elements, etc.)" and that KCAP was "unable to accommodate a one-hand restriction @ this time." O'Reilly's notation is evidence that Ford regarded Heuton as unable to perform the single, particular job he applied for: an entry-level assembler on a moving line. But this does not constitute evidence that Ford regarded him as significantly restricted from performing either a class of jobs or a broad range of jobs in various classes.

> We have been mindful of the danger that an inability to perform a specific job always can be recast as an inability to perform a class of tasks associated with that specific job. Our court thus has emphasized that a person's inability to perform one particular job is not a substantial limitation on the major life activity of working, and that working does not mean working at a particular job of the person's choice.

Knutson v. Ag Processing, Inc., 394 F.3d 1047, 1051 (8th Cir. 2005) (internal quotation marks and citations omitted).

O'Reilly made no judgment about Heuton's ability to perform other kinds of assembly-line work. She simply believed Heuton could not perform the particular demands of the particular job for which he submitted an application. Compare Daugherty, 231 S.W.3d at 822 (concluding that the plaintiff's evidence demonstrated that "the City believed he was incapable of performing an entire class of jobs—uniformed officer positions of any rank" and not merely "the *particular* job of police captain"), with Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 524 (1999) (concluding that the evidence, "[a]t most," demonstrated that the plaintiff was "unable to perform the job of mechanic only when that job requires driving a

commercial motor vehicle" and stating that the plaintiff had "put forward no evidence that he is regarded as unable to perform any mechanic job that does not call for driving a commercial motor vehicle").

3.

Additionally, Heuton argues that he provided direct evidence of discrimination, which is sufficient to survive summary judgment. "Direct evidence is that which shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the employment decision." Id. at 818 n.4. Heuton points to the deposition testimony and certain actions of Kutch, the head of the medical department. However, he neither referenced nor asserted in his summary judgment briefing that anything Kutch said or did was direct evidence of discrimination, as he does now on appeal. See Platte Valley Bank v. Tetra Fin. Grp., LLC, 682 F.3d 1078, 1086 (8th Cir. 2012) (concluding that the appellant waived argument because it was not raised in summary judgment briefing). "Absent exceptional circumstances, not present here, we cannot consider issues not raised in the district court." Id. (internal quotation marks omitted). Accordingly, this argument has been waived.

4.

Heuton further argues that Ford should be precluded from relitigating the issue of whether Ford regarded Heuton as significantly restricted from performing either a class of jobs or a broad range of jobs in various classes because this issue has been fully and adversely determined against Ford in Peterson v. Ford Motor Co., Civ. No. 03-5027 (DWF/AJB), 2006 WL 2375653 (D. Minn. Aug. 15, 2006).

Heuton invokes the doctrine of offensive collateral estoppel, which "applies when a plaintiff is attempting to prevent a defendant from pursuing an issue that the

defendant previously litigated and lost to a different plaintiff." Kent v. United of Omaha Life Ins. Co., 484 F.3d 988, 994 (8th Cir. 2007). "The application of collateral estoppel is a question of law that we . . . review de novo." Robinette v. Jones, 476 F.3d 585, 588 (8th Cir. 2007).

Heuton, however, has waived this argument because he did not raise it before the district court. Accord Ga. Pac. Consumer Prods., LP v. Von Drehle Corp., 710 F.3d 527, 533 (4th Cir. 2013) (explaining that a party waives a preclusion defense "by waiting too long to assert the defense after it becomes available"). "Collateral estoppel may be raised at any stage of the proceedings, so long as it is raised at the first reasonable opportunity after the rendering of the decision having the preclusive effect." Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp., 968 F.2d 707, 711 (8th Cir. 1992). In support of its holding, this Court in Aetna cited the Eleventh Circuit's decision in Cotton States Mutual Insurance Co. v. Anderson, 749 F.2d 663 (11th Cir. 1984). In Cotton, the court concluded that the appellee had not waived the use of offensive collateral estoppel despite the failure to raise the argument before the district court because briefing had been completed before the issuance of a state court decision that was adverse to the appellant. Id. at 665-66.

Here, unlike in Cotton, Peterson was available to Heuton at the outset of the case; it was decided in 2006, well before the commencement of this litigation in federal court in 2016. Unlike the appellee in Cotton, Heuton had ample opportunity to raise the use of offensive collateral estoppel before the district court but did not. See Von Drehle, 710 F.3d at 533-34.

Heuton argues that he did not waive the use of offensive collateral estoppel because "Ford did not assert that Heuton's regarded as disability claims are regarded as disability from working claims" and, therefore, "[t]his issue was not raised by any pleading or motion, and was only addressed by the [district court] after the parties['] briefing on the 2008 amendments issue." Appellant's Reply Br. 12-13. However, as

explained above, Heuton's disability-discrimination claim cannot be anything other than a "disability from working claim[]" because Heuton fails to identify a cognizable major life activity other than working or employment under Missouri law.

Moreover, the district court scheduled oral argument on whether Heuton had shown that Ford regarded him as having an impairment under the broad-range-of-jobs standard and instructed the parties to "file a list of cases they anticipate will be discussed by them in argument, if previously uncited cases will be discussed." Order 4, Dist. Ct. Dkt. 112; see also Order 1, Dist. Ct. Dkt. 113 ("Counsel are reminded to file a list of relied upon cases not previously cited, at least two days before the date of argument."). Notably absent from Heuton's list of cases was citation to Peterson, see Pl.'s Statement Add'l Supp. 1-2, Dist. Ct. Dkt. 115, which Heuton now claims adversely determined against Ford the very issue the district court scheduled for oral argument. Nor did Heuton raise at the oral argument the use of Peterson for purposes of collateral estoppel or use of the doctrine generally. See Oral Arg. Tr., Dist. Ct. Dkt. 129. Heuton does not argue that the avenues the district court provided were unreasonable opportunities to raise the potential offensive collateral estoppel effect of Peterson. See Aetna, 968 F.2d at 711. Accordingly, Heuton has waived the use of offensive collateral estoppel.

Because Heuton has failed to show that Ford regarded him as having a disability, his claim of discrimination under the MHRA fails.

B.

Finally, Heuton argues that the district court erred in granting summary judgment to Ford on his retaliation claim. An employer cannot "retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by th[e MHRA.]" Mo. Rev. Stat. § 213.070.1(2). A retaliation claim under the MHRA requires Heuton to show that (1) he "complained

-11-

of an MHRA-prohibited activity," (2) Ford "took an adverse employment action," and (3) "a causal connection exists between the complaint and adverse action." Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 886 (8th Cir. 2015) (citing McCrainey v. Kan. City Mo. Sch. Dist., 337 S.W.3d 746, 753 (Mo. Ct. App. 2011)).

Heuton, however, provides neither meaningful argument nor Missouri precedent supporting any variation of his retaliation claim. "Allegations of error not accompanied by convincing argument and citation to authority need not be addressed on appeal" and "we regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities." Watson v. O'Neill, 365 F.3d 609, 615 (8th Cir. 2004). Heuton's opening brief merely recites the applicable legal standard for a retaliation claim under the MHRA and, in a one sentence footnote, makes passing reference to Hill v. Ford Motor Co., 277 S.W.3d 659 (Mo. 2009). But see Ritchie Capital Mgmt., L.L.C. v. Jeffries, 653 F.3d 755, 763 n.4 (8th Cir. 2011) (refusing to address argument on the merits that was "mentioned in the[] brief only by way of a footnote"). By Fed. R. App. P. 28(j) letter, Heuton directs us to the Missouri Court of Appeals' decision in Li Lin v. Ellis, No. ED 105886, 2018 WL 5915533 (Mo. Ct. App. Nov. 13, 2018). However, the Supreme Court of Missouri granted transfer in Li Lin, see Li Lin v. Ellis, No. SC97641 (Mo. Apr. 2, 2019), which means that the Missouri Court of Appeals' decision was "necessarily vacated and set aside[.]" State v. Norman, 380 S.W.2d 406, 407 (Mo. 1964). Accordingly, we decline to consider Heuton's retaliation claim on appeal.

III.

The judgment is affirmed.

_____